J. T. MOORE ET AL. v. CHARLES E. LAMBETH ET AL.

(Filed 19 September, 1934.)

1. **Municipal Corporations F a—Verdict held to establish that contract for municipal construction was let in violation of statute.**

Where, in an action to recover for a city moneys expended by it for municipal construction, the verdict of the jury establishes that the contract for such construction was in excess of one thousand dollars, and that the contract was let to the corporate defendant without first advertising for bids, in violation of C. S., 2830, and that no emergency involving the safety or health of the people or their property existed, and that the corporate defendant conspired with the other defendants to obtain the contract in violation of the statute, and charged excessive and exorbitant prices therefor, the corporate defendant doing the work is entitled to the reasonable value of the work as determined by the jury on the issue of *quantum meruit*, and it is liable to the city for the amount by which the price paid exceeds the reasonable value of the work performed.

2. **Public Officers C c—Municipal officers held liable to city for loss sustained by their wilful and unlawful disbursement of city funds.**

Where municipal officers wrongfully, wilfully and knowingly disburse municipal funds in payment for municipal construction under a contract let without advertising for bids, as required by C. S., 2830, and it appears that the contract price was excessive and exorbitant, and was let by such officers with intent to evade the law, such officers may be held liable, for the benefit of the city, in a suit by taxpayers of the city, for the amount by which the contract price paid exceeds the reasonable worth of work performed thereunder, even though they did not act corruptly and of malice. The distinction between the suits by individuals to recover for themselves and suit to recover on behalf of the city is pointed out by STACY, C. J.

3. **Trial D b—**

Where there is no real conflict in the evidence as it relates to certain of the issues, the court may instruct the jury to answer such issues as directed if they believe the evidence.

4. **Evidence B a—**

Where a party claims the benefit of an exception in a statute, he has the burden of showing that he comes within the exception.

SCHENCK, J., took no part in the consideration or decision of this case.

APPEAL by defendants from *Hill, Special, J.,* at December Special Term, 1933, of MECKLENBURG.

Civil action by taxpayers (demand having been made upon mayor and city council to bring suit and declined or refused) to recover for and on behalf of the city of Charlotte moneys alleged to have been exorbitantly and unlawfully paid for repairs to a municipal incinerator.

The original contract for the repairs, which was based upon the requisite estimate at the time of 347 cubic feet of masonry, was awarded to

the Porter Construction Company for the lump sum of $1,370, after public advertisement for bids. Three days after the execution of this contract another agreement, in the form of a letter addressed to C. D. Isom, city engineer, and accepted by him, was entered into without public bidding, for additional repairs, based upon an unit price per cubic foot of masonry, which amounted to approximately four times the original letting. The total work done under both contracts resulted in the construction of 1,487.37 cubic feet of masonry, and the total price paid reached the sum of $6,240.89.

With respect to this additional work, the president of the Porter Construction Company testified as follows: "I knew at the time I put in my bid that there was extra work to be done; all the other bidders knew the same. I knew that the work called for by the specifications would not put the incinerator in first-class condition. I knew that contracts had to be advertised and that Mr. Isom did not have the authority to make a new contract. I would not have done the extra work except for the letter of 2 July, 1932, from the Porter Construction Company to Mr. Isom. I knew before I got my copy from the city there was to be four times as much work to be done as called for in the specifications."

To like effect is the testimony of Mayor Charles E. Lambeth: "I knew at the time there was to be extra work, amounting to about $5,000; that there had not been any public letting on the basis of the letter of 2 July, 1932; that the bid by the corporate defendant did not cover the repairs necessary to be done on the incinerator; that I voted to let the work to the Porter Construction Company for $1,370, a lump-sum price for certain specified repairs, and I did not bring up the question of additional work."

On the question of alleged fraud and collusion, the president of the corporate defendant testified: "There was a difference in the kind of work we did and that called for in the specifications"; and the secretary-treasurer of the corporate defendant testified that while "there were 8 or 10 on the job in addition to the foreman and myself," the payrolls "show a list of 18 to 20 men per week on the job."

Upon denial of liability and issues joined, the jury returned the following verdict:

"1. Did the city of Charlotte, after advertisement as provided by law, let and award to the defendant Porter Construction Company a contract for repairs on the city incinerator for a price of $1,370, as alleged in the complaint? Answer: 'Yes.'

"2. If so, did the city of Charlotte thereafter let additional repair work on said incinerator to the defendant Porter Construction Company in the further sum of $4,870.61 without advertising and public letting of such additional work, as alleged in the complaint? Answer: 'Yes.'

"3. Was such additional repair work a case of special emergency involving the health or safety of the people or their property, as alleged in the answer? Answer: 'No.'

"4. Did any of the defendants, and if so, which ones, unlawfully, wilfully and knowingly let, or aid and abet in the letting of said additional work to the Porter Construction Company with intent to evade the law with regard to advertisements and public letting of municipal contracts? Answer: 'Yes, as to Charles E. Lambeth, John F. Boyd, J. B. Pridgen, Porter Construction Company, C. D. Isom.'

"5. Did the defendants C. D. Isom and the Porter Construction Company wrongfully and unlawfully conspire to obtain said additional work for the Porter Construction Company without advertisement and public letting, and make and establish excessive prices therefor, with intent to defraud the city of Charlotte, as alleged? Answer: 'Yes.'

"6. What was the reasonable and just value of the labor performed and the materials furnished by the Porter Construction Company as included in the said additional work? Answer: '$2,630.'"

Judgment on the verdict that the plaintiffs recover of the defendants, and each of them, for and on behalf of the city of Charlotte, the sum of $2,240.61, and costs, from which the defendants appeal, assigning errors.

*E. T. Cansler, Sr., Henry F. Fisher, and Chase Brenizer for plaintiffs W. W. Watt and J. T. Moore.*

*J. F. Flowers, J. Louis Carter, and Jas. L. DeLaney for defendants Charles E. Lambeth, J. B. Pridgen, and John M. Boyd.*

*John A. McRae for defendant Porter Construction Company.*

*J. Clyde Stancill for defendant C. D. Isom.*

STACY, C. J. It is provided by C. S., 2830, that, except in special emergencies involving the health or safety of the people or their property, no contract for municipal construction or repair work, estimated to cost a thousand dollars or more, shall be awarded without first inviting proposals for the same by advertisement, etc.; and provision is also made against division of any bid or contract for the purpose of evading the law.

That this statute was violated in the instant case is established by the verdict, and we have discovered no reversible error on the record.

The case is clear with respect to the corporate defendant. In addition to the finding of fraud, which vitiates the second agreement, it is made to appear that the prices charged for the additional work were exorbitant and excessive. Its just and reasonable worth, *quantum meruit,* has been allowed the defendant. This would seem to be fair enough. *Abbott Realty Co. v. Charlotte,* 198 N. C., 564, 152 S. E., 686.

But it is stressfully contended by the other defendants that what they did was done in their official capacity, and that no liability attaches to them as individuals in the absence of express statutory provision imposing such liability, unless they acted corruptly and of malice. For this position they rely, *inter alia,* upon the following authorities: *Noland v. Trustees,* 190 N. C., 250, 129 S. E., 577; *Hipp v. Farrell,* 173 N. C., 167, 91 S. E., 831; *Templeton v. Beard,* 159 N. C., 63, 74 S. E., 735.

The case rests upon another principle. Where public funds are wrongfully, wilfully and knowingly disbursed by municipal officers without adequate consideration moving to the municipality and with intent to evade the law, as found upon the present record, those responsible for such illegal withdrawal of said funds may be required to make good the loss to the public treasury. *Brown v. Walker,* 188 N. C., 52, 123 S. E., 633; 19 R. C. L., 1142; 43 C. J., 718. The plaintiffs are not to recover for themselves individually, as in the cases cited by the defendants, but for and on behalf of the city of Charlotte. *Waddill v. Masten,* 172 N. C., 582, 90 S. E., 694.

Speaking to the subject in *Burns v. Van Buskirk,* 163 Minn., 48, 203 N. W., 608, it was said: "The vote of the council under which the city's money was withdrawn from the treasury, the ministerial acts of the mayor and clerk in issuing the orders upon which the money was withdrawn, and the act of the treasurer in paying the orders, were the successive steps taken to transfer the money from the city treasury to the pockets of Saari Brothers. It is alleged that all who took part in the transaction knew that their acts were illegal, and it is a fair inference from the facts pleaded that there was concerted action. If there was, all concerned were jointly and severally liable."

There is no real conflict in the evidence as it relates to the first two issues, hence the court was justified in instructing the jury to answer them in the affirmative if they believed the witnesses and found the facts to be as all the evidence tended to show.

The burden of proof on the third issue was properly placed upon the defendants. One who claims the benefit of an exception in the statute has the burden of showing that he comes within the exception. *S. v. Hicks,* 143 N. C., 689, 57 S. E., 441; *S. v. Connor,* 142 N. C., 700, 55 S. E., 787; *Batts v. Batts,* 128 N. C., 21, 38 S. E., 132.

The remaining assignments of error have all been examined with care. They are not sustained. Nothing appears on the record which would warrant the Court in disturbing the verdict or the judgment. They will therefore be upheld.

No error.

SCHENCK, J., took no part in the consideration or decision of this case.