W. A. RAYNOR AND H. T. BARTHOLOMEW, ON BEHALF OF THEMSELVES AND
ALL OTHER CITIZENS AND TAXPAYERS OF THE TOWN OF LOUISBURG, V.
THE COMMISSIONERS FOR THE TOWN OF LOUISBURG, W. C.
WEBB, MAYOR OF SAID TOWN, AND T. K. STOCKARD, CLERK OF SAID
TOWN.

(Filed 19 November, 1941.)

1. **Municipal Corporations § 19a—Specifications in belated advertisement
for bids and results therefrom held not to meet statutory requirement
of competitive bidding.**

   Plaintiffs restrained commissioners of a municipality from proceeding
further under a contract for machinery for its water and power systems on
the ground that the commissioners had failed to submit the contract for
competitive bidding after due advertisement as required by statute. After
temporary order was issued the municipality advertised for bids for parts
of machinery manufactured by a particular manufacturer and for diesel
engines of a specified horsepower to replace diesel engines of the same
manufacturer, as a unit, and specified that bids should state the trade-in
allowance for the diesel engines replaced. *Held:* The specifications in the
advertisement for bids unnecessarily discouraged the submission of bids
for the two new diesel engines which might have been furnished separately
by other manufacturers or dealers if the specifications had invited instead
of discouraged competitive bidding, and under the circumstances, the be-
lated advertisement, resulting in the submission of only one bid by the
manufacturer to whom the contract had been given, and that at the con-
tract price, does not cure any want of authority on the part of the com-
missioners to enter into the contract.

2. **Same—**

   Ch. 305, Public Laws 1903, does not authorize the town of Louisburg to
contract for machinery for its water and sewer system and electric light
plant in a sum in excess of $1,000 without submitting the same to com-
petitive bidding after due advertisement. C. S., 1316 (a), 2830.

3. **Same—**

   The requirements of C. S., 1316 (a), 2830, that municipal contracts for
expenditures in excess of $1,000 must be submitted to competitive bidding
after due advertisement are mandatory, and a contract made in contraven-
tion of the statutory requirements is *ultra vires* and void.

4. **Same—**

   The statutory provision that a municipality may let a contract for
expenditures in excess of $1,000 without advertisement "in cases of special
emergency" constitutes an exception to the general rule, and the commis-
sioners of a municipality may not declare an emergency where none exists
and thus defeat the provisions of the law, nor is such finding by the
municipal board upon competent evidence conclusive on the courts, but
the courts may review the evidence and determine whether an emergency
as contemplated by the statute does in fact exist.

**5. Same—**

The meaning of the word "emergency" within the statutory exception to the rule requiring municipal contracts for expenditures in excess of $1,000 to be submitted to competitive bidding after due advertisement, is not susceptible to precise definition and each case must, to some extent, stand upon its own bottom, but in any event the term connotes an immediate and present condition and not one which may or may not arise in the future or one that is apt to arise or may be expected to arise.

**6. Same—Evidence held to show that no emergency existed which would relieve municipality of duty to advertise for bids for municipal power machinery.**

Evidence tending to show that the engines used in a municipal water, sewer and power system had been in use for a number of years so that some of them needed replacement and others needed repairs, that a breakdown of one or more engines might result in a failure of the water supply, and that because of the national emergency these conditions were accentuated and the securing of machinery or materials for repairs and replacement was becoming more and more difficult, *is held* insufficient to show "an emergency" such as to relieve the municipality of the requirement of submitting the contract to competitive bidding after due advertisement, since the statute requires advertisement only for one week, it not being made to appear that a successful bidder could not be required to proceed with dispatch in making the required replacements.

**7. Taxation § 3b—**

Where the expenditure for replacements of machinery for a municipal water and power system are to be paid solely out of the revenues thereof, the hypothesis that the diversion of profits of the systems for this purpose would decrease the amount of profits paid into the general fund and therefore incidentally require an increase in the municipal tax rate is of no significance upon the constitutional limitation upon the increase in the public debt without a vote.

APPEAL by plaintiffs from *Carr, J.*, at Chambers, June, 1941. From FRANKLIN.

*Yarborough & Yarborough for plaintiffs, appellants.*
*Malone & Malone for defendants, appellees.*

SEAWELL, J. The plaintiffs, taxpayers of the town of Louisburg, brought this action in behalf of themselves and other taxpayers and citizens to enjoin the defendants, commissioners of the town, from proceeding further under an allegedly *ultra vires* contract with a manufacturer and dealer in diesel engines which the commissioners proposed to buy for use in the municipally owned power plant. The plaintiffs obtained a temporary restraining order, and upon the hearing of the order to show cause, the judge dissolved the injunction. The plaintiffs appealed.

The plaintiffs contend that defendants had no authority to enter into the contract, and that the attempt to do so was void because their action was and is in contravention of C. S., 1316 (a) and 2830 (Michie's Code, 1939), and in violation of the restrictions thereby imposed.   C. S., 1316 (a) and 2830 require municipal contracts necessitating the expenditure of $1,000 or more to be submitted to competitive bidding upon one week's advertisement, except in case of "special emergency involving the health and safety of the people or their property."

The defendants admit that they entered into a contract with Fairbanks, Morse and Company to furnish and install certain machinery, including two diesel engines of large horsepower, and to repair and replace parts of machinery furnished by Fairbanks, Morse and Company already in use in the municipally owned power plant, at a price in excess of $40,000, without advertising or submitting the contract to competitive bidding, but they claim such action to be a valid exercise of authority for several reasons; first, that the contract is for replacement of machinery and parts made only by Fairbanks, Morse and Company, and that no other maker or dealer would or consistently could enter into such competitive bidding if advertised; and second, that the transaction falls within the exception to the statutory restriction on the power to contract because of the existence of a "special emergency" within the meaning of the statute.   These are the principal contentions; but they further contend that such authority is given them by chapter 305, Private Laws of 1903, and that, at any rate, an advertisement calling for competitive bids and the response thereto by Fairbanks, Morse and Company, all taking place while the restraining order was in force, were curative of any want of authority theretofore existing.

Considering these propositions in somewhat reverse order, we do not regard the advertisement and its results as curing any want of authority on the part of the commissioners to enter into the contract if they had none theretofore, although it was evidently intended to cure the contract made with Fairbanks, Morse and Company, and, on account of the specifications, could scarcely be considered as inviting competition.   It was in the following form:

"Bids on Diesel Engines and Equipment

"Sealed bids will be received by the Town of Louisburg, North Carolina, until 5 P.M. May 16, 1941, at the City Clerk's office, for the furnishing and installing of Diesel engines and equipment as follows:

"Two, 225 HP, slow-speed, heavy-duty, Diesel Engine Generating Units, to replace two present 150 HP Fairbanks, Morse semi-Diesel Generating Units, utilizing the existing foundations, and for the change-over of

"One, Fairbanks, Morse 360 HP, Type YVA, Generating Unit, change-over consisting of replacement of heads, cylinders, pistons, connecting rods, bearings, and other miscellaneous working parts, as covered by specifications.

"In submitting bids, trade-in allowance for the two 150 HP Units which are being replaced must be stated.

"The Town proposes to buy this equipment delivered and installed complete, and financed on a basis of a minimum of 72 monthly payments, payable from the net revenues of the light and water departments only, first payment to be made 30 days after completion of installation and acceptance by the town.

"Specifications covering this work are available from the office of the City Clerk.

"The Town of Louisburg reserves the right to reject any and all bids.
"T. K. STOCKARD,
"Town Clerk, Louisburg, N. C."

There was, in fact, no *bona fide* bid in response to this advertisement. Since Fairbanks, Morse and Company, the only concern submitting a bid, declared therein that it was relying upon the original contract, naming the old contract price.

The contention that advertising and competition might be dispensed with on the ground that the required machinery could be furnished only by Fairbanks, Morse and Company is not tenable. The contract could not be considered as one entirely of repair and replacement of parts. It involved furnishing anew two large and powerful diesel engines, the price of which must have constituted the greater part of the large expenditure, and which, no doubt, if the specifications had permitted, might have been furnished by other manufacturers and dealers. These specifications, however, and we do not think by reason of necessity, were framed so as to discourage open competitive bidding.

From an examination of chapter 305, Private Laws of 1903, authorizing the town of Louisburg to issue bonds for the purpose of establishing a system of waterworks and sewage and an electric light plant, it is clear that such statute can in no way affect the present controversy.

Except where the power is legitimately exercised within the limits of the exception therein provided, C. S., 1316 (a) and 2830 (Michie's Code, 1939), prohibiting a municipality from making a contract the estimated cost of which amounts to or exceeds $1,000, unless proposals for the same shall have been invited by advertisement in the manner required by the statute, must be considered mandatory, and a contract made in contravention of its terms is *ultra vires* and void. The exception applies "in cases of special emergency involving the health or safety of the

people or their property." McQuillen, 2nd Ed., Vol. 3, secs. 904-1379. "The requirement of competitive bidding in the letting of municipal contracts is uniformly construed as mandatory and jurisdictional, and nonobservance will render the contract void and unenforceable." Mc-Quillen, *op. cit.*, sec. 1287, pp. 859-860; *Realty Co. v. Charlotte*, 198 N. C., 564, 150 S. E., 665.

The governing board of a municipality cannot declare an emergency where none exists and thus defeat the provisions of a law. While we may treat their determination with some degree of liberality respecting the conditions supposedly giving rise to the emergency, the board does not possess a legal discretion in the matter and its findings are not beyond review. 44 C. J., 102; *Mallon v. Kansas City Water Works*, 144 Mo. App., 104, 128 S. W., 764. Judicial opinion differs somewhat as to the consideration which should be given the declaration of municipal authorities that an emergency exists and the manner in which the evidence upon which the findings are made may be reviewed. *Los Angeles Dredging Co. v. Long Beach*, 210 Cal., 348, 291 Pac., 839; *Continental Construction Co. v. Lawrence*, 297 Mass., 513, 9 N. E. (2d), 550. The city council or aldermanic body, by whatever name called, is not a court whose findings of fact are binding upon appellate courts where there is evidence to support them. *Moore v. Lambeth*, 207 N. C., 23, 175 S. E., 714.

Administrative boards, although necessarily called upon to find facts upon which they base their action, are not usually immune from review of their conclusions, although there may be some evidence to support them, unless the law of their creation or some supplemental statute makes them so. Familiar instances of such statutory provision may be found in the Workmen's Compensation Act, chapter 120, Public Laws 1929, section 60 (C. S., 8081 [ppp], Michie's Code), and the Unemployment Compensation Act, chapter 1, Extra Session, 1936, section 11, and amendments (C. S., 8052 [11] [m], Michie's Code).

It is generally held that where the statute does not in terms confer authority on the municipal council to declare an emergency, but only creates an exception to the prescribed mode of contracting, predicating the power of the council on the existence of the emergency as a fact, the court may review the findings as to the existence of the emergency and declare that no emergency exists. *Continental Construction Co. v. Lawrence, supra*, 111 A. L. R., 699; *Merrill v. Lowell*, 236 Mass., 463, 128 N. E., 862; *Green v. Ogan*, 60 Wash., 309, 114 Pac., 457; *Tobin v. Sundance*, 45 Wyo., 219, 17 P. (2d), 666. It has been held that the declaration that an emergency exists, in a resolution preliminary to the making of a contract, is *prima facie* evidence of the existence of the emergency and places the burden upon the party attacking the declara-

tion. *Los Angeles Dredging Co. v. Long Beach, supra; Morgan v. Long Beach,* 57 Cal. App., 134, 207 Pac., 53. To the contrary is *Continental Construction Co. v. Lawrence, supra:* "Nor do we think that such a declaration has any presumptive or evidential force in establishing the existence in fact of an emergency." In *Moore v. Lambeth, supra,* upon the issue there joined, it was held that the burden was upon those who claim to exercise the power under the exception to establish the facts upon which the asserted power is based. "One who claims the benefit of an exception in the statute has the burden of showing that he comes within the exception," citing a number of North Carolina cases sustaining the rule.

The restriction placed upon contracts of municipalities is of the gravest importance to citizens and taxpayers, and the policy represented by the statute is no doubt the outcome of experience. In preservation of the purpose of the statute and because the power sought to be exercised is in relaxation of the restriction and found in an exception which bases it upon the existence of special facts, we do not think that the simple resolution declaring an emergency should be invested with any presumptive effect. *Moore v. Lambeth, supra.* But decision of this point is not essential to decision in this case, since, reviewing all the evidence, we do not find that it discloses an emergency within the contemplation of the statute.

While perhaps a precise definition of "emergency" as fulfilling the requirements of the statute is not possible, and each case must, to some extent, stand upon its own bottom, we hold that the emergency which would relieve the town council of the duty of advertising for competitive bids must be present, immediate, and existing, and not a condition which may or may not arise in the future or one that is about to arise or may be expected to arise.

The evidence before the hearing judge does not seem to have gone much further than to show that the town was operating its water, sewage and power system with four engines, some of which were old and needed replacement, while others not so long in use needed repairs. Some of this machinery was said to have passed the age at which replacements are ordinarily made. It was suggested that the town was growing and that demands upon the power plant would increase. As against this condition, it was pointed out that if there should be a breakdown of one or more engines in the plant, sufficient protection would not be afforded the citizens in the furnishing of water for consumption and sewage and against fires. The evidence also tended to show that because of the national emergency existing with respect to the public defense, not only were these conditions accentuated, but it was becoming, and would become more difficult to secure proper machinery or material for repair and replacement.

12—220

As against this, it should be noted that the advertisement required by the statute is simply for one week, and there seems to be no reason why a successful bidder might not have been required to proceed with dispatch in making the desired replacements.

Speaking to this situation, it is said in *Safford v. City of Lowell,* 255 Mass., 220, 151 N. E., 111: "It would be to misuse language to describe the condition which existed April 15th, as a 'special emergency involving the health or safety of the people or their property.' Without attempting an exact or all-inclusive definition, it is manifest that the language does not apply to a condition which may clearly be foreseen in abundant time to take remedial action before serious damage to the health or to the safety of person or property is likely to occur. Without doubt, lack of foresight and failure to take proper precaution to meet contingencies which any prudent person would anticipate might occasion a condition which would jeopardize public health and safety, and to which the words of the statute would be applicable. It would be remarkable, however, if the legislators used them to describe such a situation. It is not to be supposed that they intended to make it possible for municipal officers to avoid advertising for bids for public work by merely delaying to take action to meet conditions which they can foresee until danger to public health and safety has become so great that the slight further delay caused by advertising will entail public calamity. No such imminent danger of calamity existed here." *Tobin v. Sundance, supra,* 84 A. L. R., 902; McQuillen, *op. cit., supra,* sec. 1295; Dillon, Municipal Corporations, 5th Ed., Vol. 2, sec. 802. We conclude that the evidence, as it stood before the judge hearing the order to show cause, was not sufficient to bring the commissioners within the exception upon which they rely, and the attempted exercise of power in making the contract was *ultra vires* and void.

We do not feel that it is necessary at this time to deal with the constitutional question which the plaintiffs desire to present. We do not, however, think that the fact, if it is a fact, that the tax rate in the town will be incidentally increased by withdrawal of a certain part of the income of the power plant and water system heretofore applied in relief of current expenses is of significance in that respect.

Upon examination of the whole evidence before the hearing judge, we are of opinion that the injunction should have been continued to the hearing. The order dissolving the injunction is therefore

Reversed.