162 N.J. Super. 497 (1978)
393 A.2d 613
T & M HOMES, INC., A CORPORATION OF THE STATE OF NEW JERSEY, ET AL., PLAINTIFFS,
v.
TOWNSHIP OF MANSFIELD ET AL., DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided August 7, 1978.
*501 Mr. Frederick W. Hardt for plaintiffs (Messrs. Sever, Hardt & Main, attorneys).
Mr. Robert F. Rogers for defendants Planning Board of the Township of Mansfield et al. (Messrs. Rogers & Smith, attorneys).
Mr. Richard E. Gehret for defendants Township of Mansfield et al. (Messrs. Parker, McCay & Criscuolo, attorneys).
HAINES, J.S.C.
Plaintiffs, owners of 246 acres of undeveloped land in Mansfield Township, Burlington County, sue the township committee, its planning board, all of their individual members and the municipality itself. They claim that the township's zoning ordinance makes the development of this acreage economically impossible. Before commencing this suit plaintiffs, by informal request to the planning board, sought an amendment to the zoning ordinance as a solution to their problems. Plaintiffs were instructed to incorporate their proposals in an application for site plan approval. This was done. The board, after conducting a *502 hearing, denied approval but recommended further consideration of the application by the township committee, which refused to act.
Damages, compensatory and punitive, together with injunctive relief are sought on claims of due process and equal protection violations occurring as a result of the procedure employed by the planning board, the inaction of the municipal bodies and the effect of the present interim zoning ordinance upon plaintiffs' property. The constitutional arguments are based upon: (1) the federal Civil Rights Act, 42 U.S.C.A. § 1983 (1974) and (2) direct violations of the Federal Constitution, under Bivens v. Six Unknown Named Agents, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).
Defendants move to dismiss and, in the alternative, for summary judgment as to the damage claims, on the ground that they are immune from suit as a matter of law, either under the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 et seq. (Cum. Supp. 1978), or because defendants were involved in legislative activity which entitles them to an absolute immunity under federal law. In addition, defendants move to dismiss plaintiffs' claim that the township's zoning scheme is invalid under the Municipal Land Use Law.

A. Summary Judgment
Issues involving questions of law, not reflecting any factual disputes, may be resolved without trial, on the basis of pleadings and affidavits. R. 4:46-1; Judson v. Peoples Bank, etc., 17 N.J. 67 (1955). That relief has been sought by the defense motion.
The immunity issue meets the required test and is ripe for summary judgment.

B. Jurisdiction
Since this suit seeks the enforcement of federal rights in a state court, jurisdictional questions are raised. These *503 questions are answered by Endress v. Brookdale, 144 N.J. Super. 109 (App. Div. 1976), Sixth Camden Corp. v. Evesham, 420 F. Supp. 709 (D.N.J. 1976), and Brown v. Pitchess, 13 Cal.3d 518, 119 Cal. Rptr. 204, 531 P.2d 772 (Sup. Ct. 1975). See also, Travel Agents Malpractice v. Regal Cultural Society, 118 N.J. Super. 184, 195 (App. Div. 1972). It is clear from these cases that a state court has concurrent jurisdiction with federal courts over enforcement of the federal causes of action alleged.

C. Section 1983
The complaint in this action can fairly be construed as alleging a cause of action against both the individuals and the municipality under § 1983, which provides:
Every person who, under color of any statute, ordinance, regulation, custom, or usage of any state or territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
This section has been available for suits against individuals, except federal officials, since its adoption. See Wood v. Strickland, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975). However, the legislative history of the section was interpreted in Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), as precluding its use as a foundation for suits against municipalities and their agencies because they were not considered to be "persons." On June 6, 1978, in Monell v. New York, ___ U.S. ___, 98 S.Ct. 2018, 56 L.Ed.2d 611, the Supreme Court reversed this position.
Monell involved a suit by female employees of the Department of Social Services and the Board of Education of the City of New York for injunctive relief and backpay. Defendants were the Department and its Commissioner, the Board and its Chancellor, and the City of New York and *504 its Mayor. The suit was based upon § 1983 and claimed constitutional violations by reason of the official, written policy of defendants that compelled pregnant employees to take unpaid leaves of absence before such leaves were required for medical reasons. Consequently, legislative action, i.e., policy, and its enforcement were involved, as underlined by the court's reference to policy made by the "lawmakers" of the local government. Id. at ___, 98 S.Ct. 2018.
The court reconsidered the legislative history first reviewed in Monroe and concluded that it did not support municipal immunity. Accordingly, it held that
Local governing bodies, therefore, can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. Moreover, although the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments, like every other § 1983 "person", by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decisionmaking channels. [at ___, 98 S.Ct. at 2036; footnotes omitted].
The Supreme Court stressed the necessity for finding an official government policy or custom, holding that municipalities are not liable for actions of its employees or agents on the basis of respondeat superior.
I conclude that all of the defendants may be sued under § 1983.

D. The Bivens Theory
In Bivens plaintiff sued for damages allegedly resulting from a search in violation of the Fourth Amendment of the United States Constitution. The suit was under the Constitution, directly; § 1983 was not available to plaintiff since defendants were federal agents. The court held that *505 the complaint stated a cause of action, entitling plaintiff to recover damages for any injuries suffered from the claimed constitutional violation. However, Mr. Justice Brennan indicated that if "special factors counselling hesitation in the absence of affirmative action by Congress," Bivens, supra, 403 U.S. at 396, 91 S.Ct. at 2005, had been present, the remedy might not have been made available. Further, the court suggested that if Congress had provided a different remedy, thought by it to be equally effective in redressing the wrong, then the damage remedy would only be allowed if "necessary to enforce the Fourth Amendment." Id. at 397, 91 S.Ct. at 2005.
Several federal courts have utilized Bivens to recognize a cause of action against municipalities and other "non-persons." See Gentile v. Wallen, 562 F.2d 193 (2 Cir.1977); Cox v. Stanton, 529 F.2d 47 (4 Cir.1975); Gray v. Union Cty. Intermediate Ed. Dist., 520 F.2d 803 (9 Cir.1975); Hanna v. Drobnick, 514 F.2d 393 (6 Cir.1975); Donoghue v. Behler, 429 F. Supp. 403 (D.N.J. 1977). It has not been limited to suits under the Fourth Amendment. Jacobson v. Tahoe, 558 F. 2d 928, 942 (9 Cir.1977). The Supreme Court, after Monell, may differ as to its availability. Mr. Justice Powell, concurring in Monell, suggests that suits against municipalities should be limited to those brought under § 1983, since that statute is now available, leaving no reason to constitutionalize a cause of action. Monell, supra, ___ U.S. at ___, 98 S.Ct. 2018. The point received additional emphasis in Butz v. Economou, ___ U.S. ___, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), where the court said:
The presence or absence of congressional authorization for suits against federal officials is of course relevant to the question whether to infer a right of action for damages for a particular violation of the Constitution. In Bivens, the Court noted the "absence of affirmative action by Congress" and therefore, looked for special factors counselling hesitation. [at ___, 98 S.Ct. at 2909]
However, the actual decision to limit Bivens has not been made. Since it is not yet clear that § 1983 will be found *506 to be, in Bivens terminology, "another remedy, equally effective in the view of Congress," Bivens, supra at 397, 91 S.Ct. at 2005, I conclude that the municipal defendant is also subject to suit on a Bivens theory.

E. The New Jersey Tort Claims Act
Defendants claim immunity under the New Jersey Tort Claims Act, which, by express language, excuses municipalities and their officials from liability with respect to discretionary acts.
The Act is not a bar to this suit. This cause involves federal rights. These rights cannot be denied by the passage of state legislation. If the contrary were true, every state could deprive its citizens of the very rights which enactments of the Federal Congress are designed to protect. As then Judge Stevens points out in Hampton v. Chicago, 484 F.2d 602 (7 Cir.1973), cert. den. 415 U.S. 917, 94 S.Ct. 1413, 39 L.Ed.2d 471 (1974):
The district court erroneously relied on the Illinois Tort Immunity Act. Conduct by persons acting under color of state law which is wrongful under 42 U.S.C. § 1983 or § 1985(3) cannot be immunized by state law. A construction of the federal statuts which permitted a state immunity defense to have controlling effect would transmute a basic guarantee into an illusory promise; and the supremacy clause of the Constitution insures that the proper construction may be enforced. (citation omitted) The immunity claim raises a question of Federal law. [at 607; footnotes omitted]

F. Immunity
Federal courts have held consistently that the scope of immunity available is a matter of federal law. See Economou, supra, ___ U.S. ___ 98 S.Ct. 2894, 57 L.Ed.2d 895; Qualls v. Parrish, 534 F.2d 690, 695 (6 Cir.1976); Fidtler v. Rundle, 497 F.2d 794, 797-801 (3 Cir.1974); Bell v. Walff, 496 F.2d 1252 (8 Cir.1974). That the same considerations are applicable whether the claim is cognizable under § 1983 or Bivens was made clear by the Supreme *507 Court in Economou when it stated that there "is no basis for according to federal officials a higher degree of immunity from liability when sued for a constitutional infringement as authorized by Bivens than is accorded state officials when sued for the identical violation under § 1983." Economou, supra ___ U.S. at ___, 98 S.Ct. at 2907.
Defendants claim that they are entitled to an absolute immunity, while plaintiffs concede qualified immunity but no more. The doctrine of qualified immunity denies relief when the action complained of was taken in good faith, both objectively and subjectively. The rule is stated in Endress, supra, 144 N.J. Super. 109, at 136-37, as follows:
There should [be] a consideration of the objective and subjective criteria of good faith mandated by Wood v. Strickland; that is, the subjective aspect of whether the official acted sincerely and with a belief that he was doing right, and not with the malicious intention to cause a deprivation of constitutional rights; and, if that test was met, the objective standard of whether the official knew or reasonably should have known that his act would violate the clearly established constitutional rights of plaintiff.
In Wood, supra 420 U.S. at 321-22, 95 S.Ct. at 1000-1001, the Court said:
This disagreement between the Court of Appeals and the District Court over the immunity standard in this case has been put in terms of an "objective" versus a "subjective" test of good faith. As we see it, the appropriate standard necessarily contains elements of both. The official himself must be acting sincerely and with a belief that he is doing right, but an act violating a student's constitutional rights can be no more justified by ignorance or disregard of settled, indisputable law on the part of one entrusted with supervision of students' daily lives than by the presence of actual malice. To be entitled to a special exemption from the categorical remedial language of § 1983 in a case in which his action violated a student's constitutional rights, a school board member, who has voluntarily undertaken the task of supervising the operation of the school and the activities of the students, must be held to a standard of conduct based not only on permissible intentions, but also on knowledge of the basic, unquestioned constitutional rights of his charges. Such a standard imposes neither an unfair burden upon a person assuming *508 a responsible public office requiring a high degree of intelligence and judgment for the proper fulfillment of its duties nor an unwarranted burden in light of the value which civil rights have in our legal system. Any lesser standard would deny much of the promise of § 1983.
In Scheuer, supra 416 U.S. at 248-49, 94 S.Ct. at 1692, the court said:
* * * These considerations suggest that, in varying scope, a qualified immunity is available to officers of the executive branch of government, the variation being dependent upon the scope of discretion and responsibilities of the office and all the circumstances as they reasonably appeared at the time of the action on which liability is sought to be based. It is the existence of reasonable grounds for the belief formed at the time and in light of all circumstances, coupled with good-faith belief, that affords a basis for qualified immunity of executive officers for acts performed in the course of official conduct.
The Supreme Court has granted state legislators, see Tenny v. Brandhove, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951), and members of a state judiciary, see Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), an absolute immunity from suit under § 1983. Similarly, federal administrators performing functions analogous to those of judges and prosecutors have been granted an absolute immunity from suit under Bivens. See Economou, supra ___ U.S. at ___ - ___, 98 S.Ct. 2894. Executive officials of a state, see Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), federal administrators at the executive level, see Economou, supra ___ U.S. at ___ - ___, 98 S.Ct. 2894, and members of a local school board, see Wood v. Strickland, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975), on the other hand, have only received the protection of a qualified immunity from the court in actions brought pursuant to § 1983 and Bivens. The immunity to be applied here, if any, must be that which conforms to the considerations of policy and history advanced by these cases.

*509 G. Local Legislators
Although no Supreme Court decision has yet determined the immunity, if any, that is to be accorded members of a local legislative body, it is possible to discern from the decisions concerning immunity for others a procedure that may be employed in resolving the question. This procedure is evident in Wood when the court, in reaching its conclusion that school board members acting in a disciplinary proceeding are entitled to a defense of qualified immunity, considers public policy and consults common-law tradition. It is only after an examination of these sources that the court decides whether an immunity defense should be extended to the officials, and, if so, whether that immunity should be absolute or qualified. The object of this inquiry is to ascertain the balance to be struck between the citizens' interest in having a remedy for a wrong suffered and society's interest in attracting qualified persons to public office who can act without undue fear of incurring personal liability.
One of the earliest opinions examining the type of immunity that was available to local legislators at common law is that of Judge Magruder in Cobb v. City of Malden, 202 F.2d 701, 706-707 (1 Cir.1953) (Magruder, C.J., concurring). His view that local legislative officials were only protected by a qualified immunity was adopted by the Sixth Circuit in Nelson v. Knox, 256 F.2d 312, 315 (1958), and has been followed consistently in that Circuit. See Lynch v. Johnson, 420 F.2d 818 (1970). In Cobb, supra at 706, Judge Magruder found that members of subordinate legislative bodies were granted only a qualified privilege in suits in defamation at common law and therefore concluded that
* * * [A]s respects members of similar subordinate legislative bodies, there has not been such a general and unquestioned recognition at the common law of an absolute immunity from civil liability for acts done by such persons in their official capacity, comparable to the complete immunity accorded to members of state legislatures.
*510 Two subsequent federal district courts, after undertaking their own examination of the common law, reached a contrary conclusion. Shannon Fredericksburg Motor Inn, Inc. v. Hicks, 434 F. Supp. 803 (E.D. Va. 1977); Shellburne, Inc. v. New Castle Cty., 293 F. Supp. 237 (D. Del. 1968). They indicate that Judge Magruder overlooked the more general rule that local legislators, acting within the scope of their duties, are absolutely immune from suits grounded upon their legislative activities.
Moreover, the Shellburne and Shannon cases hold that members of lower legislative bodies, functioning as legislators, are entitled to the same immunity granted state legislators in Tenny. They reason that since there is no functional distinction between members of boards adopting zoning legislation and members of state legislatures adopting state-wide legislation, all the public policy justifications traditionally advanced for affording the latter an absolute immunity are equally applicable to the former.
Adler v. Lynch, 415 F. Supp. 705 (D. Neb. 1976), disagrees. It distinguishes members of the local body from state legislators on the ground that the latter require immunity because they are obliged to "conceive public policy from the myriad policy options open to the sovereign", id. at 712, while the former are more like "executive officials who have a more limited jurisdiction, and, must confine their discretion to matters which are more or less specifically defined within the state's public policy," Ibid. It granted only qualified immunity to local zoning commissioners.
In this setting it is apparent that no firm precedent exists for the application of any particular doctrine of immunity to the individual defendants.
My independent examination of the common law supports, generally, the conclusions of Shannon and Shellburne that the rule at common law is that members of lower legislative bodies are absolutely immune from suit with regard to the exercise of their discretion in enacting local ordinances. See, e.g., Baker v. State, 27 Ind. 485 (Sup. Ct. *511 1867); Commonwealth v. Kennedy, 118 Ky. 618, 82 S.W. 237 (Ct. App. 1904); Jones v. Loving, 55 Miss. 109 (Sup. Ct. 1877); Klauder v. Cox, 295 Pa. 323, 145 A. 290 (Sup. Ct. 1929); Wasserman v. City of Kenosha, 217 Wis. 223, 258 N.W. 857 (Sup. Ct. 1935); Bricker v. Sims, 259 S.W.2d 661 (Sup. Ct. 1953); Shellburne, Inc. v. Roberts, 238 A.2d 331 (Del. Sup. Ct. 1968); 20 C.J.S. Counties § 97 (1940); 2 Harper & James, The Law of Torts, 29.10 (1956); Prosser on Torts (3 ed. 1964), at 126.
There are, however, at least two disputed exceptions to this rule. The first concerns whether an action for restitution of funds improperly appopriated may be brought by individuals against legislators for the benefit of the municipality. Compare Russell v. Tate, 52 Ark. 541, 13 S.W. 130 (Sup. Ct. 1890) (action may be brought), and Moore v. Lambeth, 207 N.C. 23, 175 S.E. 714 (Sup. Ct. 1934) (same), with Incorporated Village of Hicksville v. Blakeslee, 103 Ohio 508, 134 N.E. 445 (Sup. Ct. 1921) (action cannot be brought), and Lough v. City of Estherville, 122 Iowa 479, 98 N.W. 308 (Sup. Ct. 1904) (same). The second exception may arise in defamation actions and was discussed by Judge Magruder in Cobb. Compare Mills v. Denny, 245 Iowa 584, 63 N.W.2d 222 (Sup. Ct. 1954); Ivie v. Mintor, 75 Or. 483, 147 P. 395 (Sup. Ct. 1915); Borch v. Bernard, 107 Minn. 210, 120 N.W. 33 (Sup. Ct. 1909), and Prosser on Torts (3 ed. 1964), at 109, all calling for a qualified privilege, with Bolton v. Walker, 197 Mich. 699, 164 N.W. 420 (Sup. Ct. 1917), conferring an absolute privilege.
Nevertheless, the well-established rule at common law was one of absolute immunity for all legislators, regardless of level. Further, Adler's focus on the extent of the discretion exercised by legislators as a key factor in the immunity determination is suspect after Economou. In Economou the Supreme Court criticized the appellate court for similarly focusing on the "circumscribed discretion" of the executive branch as a justification for extending only a qualified immunity to certain members of the Department of Agriculture. *512 Although the court reiterated that as a general proposition a member of the executive branch would only receive qualified immunity from damage liability, it also emphasized that "our decisions recognize that there are some officials whose special functions require a full exemption from liability," Economou, supra ___ U.S. at ___, 98 S.Ct. at 2912, and instructed that it is the nature of the particular official's responsibility and not the official's location in the government which is to be determinative. Consequently, administrative officials performing functions akin to those of judges and prosecutors were found to be entitled to the same absolute immunity normally afforded persons occupying these positions.
The most recent pronouncement concerning legislators is Jacobson v. Tahoe, 558 F.2d 928 (9 Cir.1977). There, members of a regional planning agency, held to be federal officials, were sued under Bivens in a "taking" action. The court held them to be entitled to absolute immunity when acting as legislators, citing only Tenny.
On this analysis I conclude that under the common law as well as the federal law developed pursuant to § 1983 and Bivens, legislators who are acting within the scope of their authority, discharging their responsibilities in the enactment of legislation, are absolutely immune from suit. However, these precedents must be considered in the light of public policy. That was their basis for decision and must, in the final analysis, be mine. This requires a balancing of plaintiffs' right to redress for constitutional transgressions against the interest of the state and society in attracting and retaining public officials, many of whom, as in the case of the planning board members who are defendants here, serve without compensation. Subjecting public officials, on a personal basis, to damage suits, offers the obvious prospect of shunned and vacated offices, undermining the ability of government to function. It is unfair and unwise to expect these officials to undertake significant responsibilities and decisions involving factual and legal subtleties at the risk of *513 answering for any mistake in damages. Were this the law, decisions would be long delayed and too often influenced by concerns about liability. These considerations of policy, in combination with the general rule at common law, strongly support the adoption of a conclusion which provides broad protection for individual members of municipal boards who are functioning as legislators. I find that the individual defendants here were so acting and hold them to be immune, absolutely, from suit.[1]
It should be noted that nothing in the facts of this case indicates that any application was filed with the planning board or the township committee over which either had any jurisdiction. Consequently, immunity attaching to enforcement activities of these bodies, which have executive and quasi-judicial powers, is not considered.

H. The Municipality
The governing body of the township is the township committee. The planning board is composed of the committee's appointees and possesses independent powers by virtue of our planning statutes. Decisions made by either of these municipal bodies must represent the official policy of the township. Therefore, under Monell, in § 1983 suits the government entity, i.e., the Township of Mansfield, is responsible for injury inflicted through unconstitutional actions of these bodies, subject to such immunity defenses as may be available.
In the context of lawsuits based upon the principle set forth in Bivens, lower federal courts have considered whether a government entity of a state is entitled to any immunity.
*514 In Owen v. Independence, 560 F.2d 925 (8 Cir.1977), the court denied the defense of qualified immunity, as defined in Wood, to a city sued for the "equitable remedy" of a back pay award. Two justifications were advanced in support of this decision. First, it was pointed out that Wood itself had emphasized that "`immunity from damages does not ordinarily bar equitable relief as well'." Id. at 940. Secondly, the official immunity doctrine espoused in Wood was found inapplicable because "the primary justification for the defense of good faith in Wood, to insure that public officials will not hesitate to discharge their duties out of fear of personal monetary liability * * * does not exist where the city itself will bear the monetary award." Ibid. This holding was carefully limited to awards in the nature of back pay, and the opinion purposely leaves undecided whether the same reasoning would be applicable to damage awards, in general, against a government entity.
Other cases have not so circumscribed their denial of an immunity defense to a government entity. For example, in Handler v. San Jacinto Junior College, 519 F.2d 273 (5 Cir.1975), which also involved a claim for an award of back pay, the court rejected proffered immunity defenses based upon the Eleventh Amendment and Wood. In partial contrast to Owens, the back pay award was viewed alternatively "as damages for illegally terminated employment or as an aspect of equitable relief." Id. at 278. Similarly, in Hostrop v. Board of Junior College, 523 F.2d 569 (7 Cir.1975), it was held that the Board was, as an entity, liable for damages stemming from the deprivation of plaintiff's right to procedural due process in an employment-termination proceeding. The only immunity-type defense considered and rejected was that provided by the Eleventh Amendment. Accord, Unified School Dist. v. Epperson, 551 F. 2d 254 (10 Cir.1977), vacated 435 U.S. 948, 98 S.Ct. 1572, 55 L.Ed.2d 797 (1978).
The rejection by both Owen and Hander of attempts to apply the Wood rationale to government entities is premised *515 upon the theory that individuals need the protection of immunity against the specter of liability, while government entities do not. This analysis misapprehends the underlying concern of the court, which is with the potential paralysis of government through fear of monetary liability. That fear affects the government entity, through its officials, whether or not their personal liability is limited.
Prior to Bivens municipalities had also been held subject to suit directly under the Fourteenth Amendment for takings without just compensation. See, Note, "Damage Remedies Against Municipalities for Constitutional Violations," 39 Harv. L. Rev. 922, 950, n. 145 (1976). As one commentator has pointed out, the establishment of a private cause of action under the Fifth Amendment was really the first time that the court "exercised the judicial power to create a damage remedy in a case arising under the Constitution." Dellinger, "Of Rights and Remedies: The Constitution As a Sword," 85 Harv. L. Rev. 1532, 1542, n. 58 (1972); see Bivens v. Six Unknown Named Agents, 409 F.2d 718, 723 (2 Cir.1969), rev'd 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). The lack of any immunity for the municipality in this type of proceeding seems to provide a possible parallel to the instant suit. Indeed, Mr. Justice Rehnquist, dissenting in Monell, suggested that henceforth "taking" actions will have to be brought in the guise of a § 1983 action. See Monell, supra ___ U.S. at ___, n. 4, 98 S.Ct. 2018 (Rehnquist, J., dissenting).
The Fifth Amendment, however, is unique in its establishment of a standard by which a plaintiff's recovery is to be computed, i.e., just compensation. In taking actions the municipality is called upon to pay for property rights that it has appropriated for public use. The public has received a benefit for which the amendment requires fair value to be paid. Typically, the fair market value of the property constitutes just compensation. See, e.g., United States v. Virginia Electric & Power Co., 365 U.S. 624, 633, 81 S.Ct. 784, 5 L.Ed.2d 838 (1961). In these cases the liability of the *516 municipality is of no concern: it merely pays for what it receives, its asset picture remains unchanged. The public policy justification for the erection of an immunity defense is not implicated in these circumstances because there can be no legitimate fear of a potential liability that will deter government action.
Most recently, Monell, supra, left open the question of municipal entitlement to a qualified immunity, stating:
Since the question whether local government bodies should be afforded some form of official immunity was not presented as a question to be decided on this petition and was not briefed by the parties nor addressed by the courts below, we express no views on the scope of any municipal immunity beyond holding that municipal bodies sued under § 1983 cannot be entitled to an absolute immunity, lest our decision that such bodies are subject to suit under § 1983 "be drained of meaning". [___ U.S. at ___, 98 S.Ct. at 2041]
As shown above, existing case law dealing with this issue is distinguishable or unpersuasive. The common law, which provided useful guidance with regard to individual defendants, generally afforded municipalities absolute immunity. As I read Monell, it denied absolute immunity to municipalities in a setting which involved both legislation and its enforcement. Under these circumstances the common law is no longer a reliable guide. Consequently, the court must reach beyond precedent to a consideration of public policy in deciding the immunity issue.
The factors supporting a conclusion that the township, as opposed to its officials, should be absolutely liable are: first, the imposition of liability would permit an individual, denied constitutional rights by municipal action, to have a remedy in damages, absent which these rights become hollow promises. Second, the knowledge of liability would promote responsibility in municipal activities, improving the quality of undertakings and appointments. Arbitrary action would be discouraged. Third, the consequences of liability would be shared by all of the citizens of a municipality. Fourth, *517 the financial burden of liability could be met or tempered through insurance.
Factors supporting an opposite conclusion are: first, the imposition of liability upon the municipality could discourage citizens from seeking public office by reason of added responsibility, and the increased potential for criticism, notwithstanding the absence of personal damage risk. Second, it could impose an unreasonable financial burden on municipalities, whose resources are already strained. Third, it would put a weapon in the hands of those seeking municipal approvals which could promote decisions not in the public interest.
There are partial answers to these arguments. The discouragement of public service seems doubtful. Public officials acting as legislators, or otherwise, have always been charged with responsibilities which affect the health and the welfare of their governments. Added cost, except in extreme cases, makes a feeble argument for the deprivation of constitutional rights  these rights, if measurable in dollars, have always been expensive. Further, the weapon which a rule of liability may provide, merely balances that which nonliability has heretofore supplied to the municipality  a balancing which may be overdue. The threat of suit, underlined by the actuality of much municipal litigation, has not been considered a deterrent to municipal responsibility or action in the past and is an unlikely persuader (in any excessive sense) to municipal accommodation.
At the same time, fear of liability must be recognized as an inhibiting factor in the municipal decision-making process. Insurers have had no opportunty to assess the risks involved, and insurance may be expensive or unavailable. The unknown aspects of potential litigation and its consequences invite caution. These countervailing concerns illustrate the impossibility of nice distinctions in this evolving area of broad government responsibility and the necessity for a balancing of considerations. Providing absolute immunity would deny all the arguments in favor of the injured citizen, *518 and is no longer permitted under Monell. Allowing complete liability would deny all the arguments for protecting the government entity. These circumstances invite the pursuit of a middle path. Consequently, I hold that municipalities are entitled to a qualified immunity in § 1983 and Bivens suits, except as to taking claims, concerning which I follow the many precedents denying immunity of any kind. This provides relief for those who are wronged by municipal action and promotes government caution. At the same time it protects municipalities through the operation of objective and subjective good faith tests, which are flexible, depending on scope of authority and circumstance.
The hurdles for plaintiffs remain high. In addition to overcoming a defense of qualified immunity, they must establish policy or custom which violates a constitutional right.
In this action there is no point in holding defendants board and committee liable. They are no more than vehicles which have established the custom or policy of the township. Their funds are municipal funds. Accordingly, only the township remains as a viable defendant.

I. Conclusion
My conclusions have been general. Except with regard to the request for injunctive relief, they require dismissal of these proceedings as to all defendants except the township, as to which separate consideration of plaintiffs' claims is necessary.
1. Procedural Due Process

The Fourteenth Amendment prohibits the deprivation of life, liberty or property by the state without due process of law. Plaintiffs claim a denial of procedural due process, falling within the prohibition of the Amendment, in the failure of the township to provide policy or standards for "rezoning," i.e., for the amendment of its zoning ordinance. They point to the fact that the municipality *519 has amended its ordinance on a number of occasions without following consistent procedures or policies, concluding that "while the plaintiff does not suggest that rezoning procedures are required if no rezoning occurs, when rezoning is present a consistent announced policy must be followed." This argument can succeed only if plaintiffs show a property interest in the procedural requirements which they assert.
Neither New Jersey zoning statutes nor case law, past or present, entitles a citizen to initiate the legislative process or to establish legislative policy, as a matter of right. These policies and processes need not be "consistent" in a zoning setting. On the contrary, they must be quite flexible, changing with community change, reacting to present need. Consequently, I find that no interest of plaintiffs has been infringed here, which is protected by the constitutional guarantee of procedural due process. On this issue, summary judgment must be awarded to defendants.
2. Substantive Due Process

The argument is made that defendants' zoning ordinance violates the Fourteenth Amendment because it is "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare," the federal standard established by Euclid v. Ambler, 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926). Thus, it is said, plaintiffs are deprived of substantive due process.
The question is factual. It must await trial for determination and is not ripe for summary judgment.
3. Taking Property Without Due Process

Plaintiffs contend that defendants' zoning and subdivision regulations are so restrictive that they make the use of its property impossible on any reasonable basis, constituting "inverse condemnation." The theory, founded upon both state and federal constitutions, finds adequate *520 support in the cases. The issue must be tried. Summary judgment is not appropriate.
4. The Interim Zoning Ordinance

The zoning ordinance which is the subject of this suit is an interim ordinance, permitted by our Municipal Land Use Law which provides that "a municipality may adopt a reasonable interim zoning ordinance * * *." N.J.S.A. 40:55D-90(b) (Cum. Supp. 1978). Plaintiffs, in addition to their federal claims, urge the invalidity of the ordinance under this statutory provision. The question of whether the township's ordinance is reasonable is factual, requiring trial. Summary judgment must be denied.
5. Injunctive Relief

The issue of injunctive relief is not raised by the motion and is mentioned only because it is demanded in the complaint. Doctrines of immunity have not been held to bar injunctive remedies in § 1983 cases. Wood v. Strickland, supra. Policy considerations involving damage suits are not present. I find that plaintiffs' complaint states a cause of action for injunctive relief against all of the defendants; no immunity applies with respect to that requested remedy.
NOTES
[1] In Economou the court noted that the Federal Government could not be sued by reason of the federal Tort Claims Act. Judicial and legislative officials, acting within the sphere of their authority, have absolute immunity. Consequently, in a federal forum only individual defendants, in an executive setting, are liable in Bivens actions. In a state forum broader liability obtains.