64 N.J. Super. 570 (1960)
166 A.2d 822
VICTOR LA BRUNO AND GERTRUDE LA BRUNO, HIS WIFE, PLAINTIFFS-RESPONDENTS,
v.
ALONZO W. LAWRENCE, TRADING AS MARSH & LAWRENCE, ET AL., DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued December 12, 1960.
Decided December 27, 1960.
*573 Before Judges CONFORD, FREUND and KILKENNY.
Mr. Roger H. McGlynn argued the cause for appellants (Messrs. McGlynn, Stein & McGlynn, attorneys).
Mr. Warren Brody argued the cause for respondents (Messrs. Winetsky and Brody, attorneys).
The opinion of the court was delivered by KILKENNY, J.A.D.
In this action for trespass to plaintiffs' real property in Rahway, New Jersey, resulting from the wrongful erection of a fence thereon, the jury in the Union County Court awarded plaintiffs $900 as compensatory damages against all defendants. In addition, the jury allowed punitive damages totalling $4,300. The sum of $300 was assessed against the defendants Smith, plaintiffs' neighbors, who ordered the fence erected; $1,000 against the defendant Cohill, the contractor who erected the fence; and $3,000 against the defendant Lawrence, a local surveyor, whose erroneous staking of the boundary line between the Smith and La Bruno properties caused the Smiths' fence to be erected on the La Bruno property.
The trespass, the award of compensatory damages therefor, and the quantum thereof are not disputed on this appeal. No argument has been made that the amount of the respective punitive damages is excessive. The appeal is concerned solely with the propriety of the award of punitive damages.
The defendant property owners, the Smiths, and the defendant contractor, Cohill, contend that punitive damages against them are not justified, because the erection of the trespassing fence was in reliance upon and the result of a *574 surveyor's mistake. The defendant surveyor, Lawrence, argues that punitive damages do not lie against a surveyor for improperly locating a common boundary line upon which a fence was mistakenly placed.
The complaint, which specifically demanded compensatory and punitive damages, charged that the plaintiffs had called upon the defendants, before the fence was erected, to desist from the proposed construction and endeavored to have the defendants inspect a survey previously made by Lawrence. It is then alleged in paragraph 4 of the complaint:
"Nevertheless the defendants persisted in the threatened trespass and intentionally, willfully and therefore maliciously and also recklessly and wantonly did enter upon the land and property of the plaintiffs and construct a fence on plaintiffs' property and damaged and destroyed a masonry patio, sidewalks, a flower bed and other plantings and other property of the plaintiffs." (Emphasis supplied)
Obviously, if the trespass by the defendants was in the aggravated form, as characterized by the above descriptive language, the jury was justified in awarding punitive damages, in addition to those necessary to compensate plaintiffs for their actual damages sustained. The concept of punitive damages for a willful and wanton disregard of another's rights, or for a malicious trespass or other wrong, has long been established in our law.
In Winter v. Peterson, 24 N.J.L. 524 (Sup. Ct. 1854), an overseer who had maliciously, without authority, cut down a tree, was held liable for punitive damages. See 15 Am. Jur., Damages, §§ 279 to 282; 52 Am. Jur., Trespass, § 67; and 87 C.J.S. Trespass § 112, indicating that, in the domain of trespass upon real property, upon a showing of an intention bordering on malice, punitive damages are recoverable. In Trainer v. Wolff, 58 N.J.L. 381 (E. & A. 1895), defendant was required to pay punitive damages when he removed weather boards from plaintiff's house, without plaintiff's permission, in order effectively to raise his *575 own house another story. The court there said that "the finding of the jury established the fact that the act was done with a wanton and reckless disregard" of plaintiff's rights. In Dreimuller v. Rogow, 93 N.J.L. 1, 3 (Sup. Ct. 1919), the court referred to the right to award exemplary damages in "all trespasses committed against the property of another, which involves malice or a wanton and reckless disregard of the rights of the person against whom the tortious act is committed." Also see Eatley v. Mayer, 9 N.J. Misc. 918, 154 A. 10 (Cir. Ct. 1931), not a trespass case, in which it was said that "gross negligence does not support a charge for punitive damages, while a charge of willful and wanton disregard does support such a charge. The test is the intent with which the act is committed."
The cases would thus seem to indicate that one or the other of two factors must be found before punitive damages can be awarded in a suit for trespass to real property, viz.: (1) actual malice, which is nothing more or less than intentional wrongdoing  an evil-minded act; or (2) an act accompanied by a wanton and willful disregard of the rights of another. Clearly, each case must be governed by its own peculiar facts. Accordingly, we must examine the facts herein, as to each of the defendants, in order to decide the validity of the award of punitive damages in this case.
About July 1958 the defendants Smith, desiring to build a side wire fence to separate their property from that of plaintiffs, requested the defendant Lawrence, a local surveyor who had made the original survey in 1949 for the plot containing the Smith and La Bruno property, to stake out the boundary line between the Smith and La Bruno property. Lawrence went to the property and placed three boundary stakes in the ground, one in the front, one in the rear, and a third in the middle of plaintiffs' flower bed. The plaintiff, Victor La Bruno, having been informed thereof that evening by his wife, immediately took measurements from the stakes and compared them with the survey which he had *576 obtained when he purchased his home. This survey, also prepared by Lawrence, revealed that the stakes had been placed one foot over on the La Bruno property.
La Bruno then went over to see Smith and informed him of the error. Smith refused to look at La Bruno's survey, but told La Bruno that he would not erect the fence until La Bruno had checked with Lawrence. The next day La Bruno went to Lawrence's office and told him that the stakes were on his property. Lawrence disputed La Bruno's claim, but refused to check his own prior survey, which La Bruno had brought with him. Frustrated in his attempts to point out the error, La Bruno returned home and called an attorney. The attorney thereupon wrote a letter to the Smiths, advising them of the apparent error and requesting that the surveyor be called upon to explain the matter satisfactorily to all concerned.
The Smiths informed Lawrence of the letter and also engaged their own attorney. About two or three weeks later, after consultation with their attorney, the Smiths told Cohill, the contractor, to erect the fence along the line as staked out by Lawrence. In doing so Cohill had to remove plaintiffs' flower bed and break off portions of the walk and patio, which the plaintiffs had painstakingly constructed two years before.
Meanwhile, La Bruno had hired another surveyor who pointed out the mistake to Lawrence. Thereupon, the fence, substantially completed at that time, was removed by Cohill and reconstructed within the Smith property line.
We consider first Lawrence, the surveyor, whose initial mistake of wrongfully placing the stakes on the La Bruno property started the chain of causation which resulted in the damage and litigation. Lawrence committed a trespass and his mistake, honest belief, or professional neglect, is no defense to a trespass. Restatement of Torts, § 164; Prosser on Torts, § 17, p. 115 (1941). A trespass by mistake or through carelessness will ordinarily not justify an award of punitive damages, because the element of mistake *577 or neglect negates any intentional wrongdoing. Such a mistake of one foot in the boundary line does not here, per se, bespeak willful and wanton disregard of the rights of another.
Lawrence, however, aggravated his original trespass by mistake, by his stubborn refusal to examine his own prior survey and to correct his alleged error, when the matter was called to his attention by La Bruno originally, and later by the Smiths, when they received a letter from La Bruno's attorney. Even when La Bruno put it to him that he had to be wrong one time or the other, he said, "I'll cross that bridge when I come to it." Lawrence was fully aware from his personal inspection, when he placed the stakes, that the erection of the fence by the Smiths along that boundary line would damage the La Bruno walk, patio and flower bed. As a surveyor he knew or should have known that the Smiths and their contractor would probably rely upon his professional skill and judgment in erecting the fence. He demonstrated a willful and wanton disregard of the property rights of the plaintiffs, that was reasonably calculated to aggravate his original mistaken trespass by the consequent trespasses of the Smiths and Cohill. The jury could justifiably find, as they did, in Lawrence's overall conduct and attitude, a proper basis for the award of punitive damages against him. He probably gave the impression to the jury of a man who would rather see property destroyed by his error than admit that he had made the error.
Turning next to Cohill, the contractor, we find no justification for the award of punitive damages against him. There is no evidence of any actual or express malice on his part. Nor does the record show any willful and wanton disregard by Cohill of the plaintiffs' property rights. He had been engaged by the Smiths to erect the fence, and had gone to the property, where he made the required measurements. He saw from the surveyor's stakes that the fence would cut across the plaintiffs' patio, walk, and flower bed. Cohill immediately advised Mrs. Smith of this and was told *578 of the boundary line dispute and that he should not erect the fence until she was advised further by her attorney.
Cohill did nothing further until two or three weeks later when the Smiths called him and told him to go ahead. He had reason to believe that proper legal assurances had been received from the Smiths' attorney, even though Mrs. La Bruno protested to one of his men about breaking up part of the patio. Later, when the error was ascertained, the fence was taken out by him and moved one foot closer to the Smith house.
While Cohill took the risk of going ahead with the work on the assurances of the Smiths, and thereby became liable with the others in trespass for compensatory damages, his conduct was not malicious, or willful and wanton, under the circumstances. The award of punitive damages against Cohill should be reversed. Plaintiffs have argued that Cohill is liable under the theory expressed in the recent case of Dalon Contracting Co. v. Artman, 101 Ga. App. 828, 115 S.E.2d 377 (Ct. App. 1960). We find the facts in that case of continued blasting after notice greatly different. Also, a special provision of the Georgia Code is a controlling factor.
Finally, we direct our attention to the Smiths, who had been next door neighbors of the plaintiffs for about seven years prior to this unfortunate incident. There is evidence that some measure of unfriendliness had previously existed between them. This alone may have mistakenly influenced the jury's award of the relatively small sum of $300 by way of punitive damages. There was no showing of actual malice on the part of the Smiths in connection with the erection of the fence. A general lack of friendship for one's neighbors cannot, without more, be translated into a finding of malice with reference to particular conduct. The evil intent must concur with the doing of the wrongful act to spell out a case of malicious tort.
Did the Smiths act in a willful and wanton manner in disregard of the plaintiffs' property rights? The question is close, but we conclude from the evidence that punitive *579 damages were not properly awarded against the Smiths. When they planned the erection of the fence, they sought proper professional advice, evidently to avoid any conflict with their neighbors. They engaged a local surveyor to stake out the boundary line, a man whose previous knowledge of the property should have insured an expert and correct result. There is no suggestion that the Smiths were seeking to gain a foot of their neighbors' property. They sought only to ascertain the proper boundary line for their fence. They had a right to believe that Lawrence's stakes were accurately placed.
When Mr. La Bruno called that evening to tell Mr. Smith that the stakes were one foot over on his property, Smith might very well have looked at La Bruno's survey and made his own measurements. That he did not do so was not unreasonable. He had placed the matter in the hands of Lawrence. He suggested that La Bruno show the survey to Lawrence, who had made it. La Bruno accepted that suggestion and went to Lawrence, with the result above noted. But Lawrence's conduct is not attributable to the Smiths. Again, when La Bruno's attorney wrote to the Smiths, they did not disregard the letter. They referred its contents to Lawrence and engaged their own attorney for advice. While we do not know the precise conversation between the Smiths and Lawrence, or their attorney, their testimony is that they were advised by their attorney to proceed with the erection of the fence along the line staked out by Lawrence. They then directed Cohill to proceed, but had delayed construction for some two or three weeks while obtaining professional advice. Their conduct was not unreasonable under the circumstances. It was clearly not willful and wanton, or inspired by any evil intent.
Accordingly, the judgment of the Union County Court is affirmed as to the compensatory damages, against all the defendants; and, as to the punitive damages, the judgment is affirmed as to the defendant Lawrence, and reversed as to the defendants Cohill and the Smiths.