PAUL ANASTASIO, MARVIN GREENMAN, AND ORESTO ANASTASIO, INDIVIDUALLY, AND T/A BRIAR HILL VILLAS COMPANY, A PARTNERSHIP, PLAINTIFFS, v. PLANNING BOARD OF THE TOWNSHIP OF WEST ORANGE, FRED W. LABASTILLE, JOSEPH BRENNAN, JR., JOSEPH BRENNAN, SR., JOSEPH ANTONUCCI, MARY LANNON, MARY ANDERSON, ALTON WILLIAMSON AND SAMUEL SPINA, DEFENDANTS.

Superior Court of New Jersey
Law Division Essex County

Decided September 10, 1984.

*Roy B. Greenman* for plaintiffs (*Thayer, Greenman and Budin,* attorneys).

*Thomas C. Brown* for defendants Planning Board of the Township of West Orange, Joseph Brennan, Jr., Joseph Brennan, Sr., Joseph Antonucci, Mary Lannon, Mary Anderson, Alton Williamson and Samuel Spina.

*Michael E. Panagos* for Township of West Orange and defendant Fred W. LaBastille (*Joseph G. Dooley, Jr.,* attorney).

FEINBERG, J.S.C.

This case stems from an action brought by plaintiffs against defendants, Planning Board of the Town of West Orange, Joseph Brennan, Jr., Joseph Brennan, Sr. (since deceased), Joseph Antonucci, Mary Lannon, Mary Anderson, Alton Williamson and Samuel Spina, alleging violations of the Civil Rights Act, 42 *U.S.C.A.* § 1983, and the New Jersey Municipal Land Use Act, *N.J.S.A.* 40:55D–1 *et seq.*

The events giving rise to this suit are detailed in an opinion of this court. The trial court is concerned with a period of time commencing May 1979 until the present.

It is plaintiffs' contention that the above named defendants not only deliberately and maliciously delayed hearing plaintiffs' site plan applications, but also did not conduct the hearings in good faith.

The Honorable John A. Marzulli, pursuant to a complaint in lieu of a prerogative writs, entered an order in October 1982 and held that defendants' denial of plaintiffs' site plan was arbitrary and capricious and ordered defendant planning board to grant the site plan approval. The count for damages was severed and is the subject of this action. No appeal was ever filed and on November 3, 1982, the planning board pursuant to the court's order did grant site plan approval. However, it was not officially approved until 13 months subsequent to the approval.

Defendants raised defenses of absolute and qualified immunity and under the order of this court referred to on June 1, 1984, it was held that these defenses were affirmative and had to be proved by the parties asserting such defenses.

Defendants thereafter proceeded with their proofs and all defendants, with the exception of the late Joseph Brennan, Sr., testified.

■ A review of the applicable principles of law is necessary. Plaintiffs' allegation of deprivation of constitutional rights in violation of 42 *U.S.C.A.* § 1983 is derived from the Civil Rights Act of 1871.

> *Every person*, who, under the color of any statute, ordinance, regulation, custom or usage of any State or territory, subjects or causes to be subjected, any citizen of the U.S. or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in any action at law, suit in equity or other proper proceeding for redress. [42 *U.S.C.A.* § 1983]

In order for the plaintiffs to state a claim under § 1983, there must be an allegation of a deprivation of a constitutional right done under color of state law.

■ It is undisputed that the defendants were acting under color of state law. The Planning Board of West Orange is a public entity established pursuant to the Municipal Land Use Law (M.L.U.L.), *N.J.S.A.* 40:55D–23. The members of the planning board and the town planner are appointed by the mayor for terms of from one to four years and may not be removed from office except for cause after a public hearing. *N.J.S.A.* 40:55D–23, –69. The board is required to hold hearings on development proposals, with the minutes of all regular or special meetings recorded. These hearings are subject to the Open Public Meetings Act which directs that decisions are to be made in open sessions of which the public has advance notice. After a determination on an application the board must issue a written decision including findings of fact and conclusions of law. A copy of the decision must be mailed within ten days to the applicant or his/her attorney with the requirement that there be a publication in an official newspaper. An adverse determination may be challenged in the Superior Court of New Jersey, *R.* 4:69–6(b)(3), and nothing in the M.L.U.L. may be constituted to affect that right. Plaintiffs undertook to appeal the board's decision which resulted in Judge Marzulli's order. Plaintiffs are entitled to have the federal question heard in state court, as state courts possess concurrent jurisdiction with federal courts concerning civil rights action. *Endress v. Brookdale Community College,* 144 *N.J. Super.* 109, 132 (App.Div. 1976); *T & M Homes Inc. v. Township of Mansfield,* 162 *N.J. Super.* 497, 503 (Law Div.1978).

■ Since the trial court at the motion to dismiss the complaint had held that the affirmative defense of qualified immunity was available, the next issue to confront the court is the one dealing with qualified immunity. The United States Supreme Court in *Pearson v. Ray,* 386 *U.S.* 547, 87 *S.Ct.* 1213, 18

*L.Ed.*2d 288 (1967) held that traditional tort law immunities were available as defenses to suits under § 1983. The scope of immunity available to any part is a matter of federal law. *Butz v. Economou*, 438 *U.S.* 478, 98 *S.Ct.* 2894, 57 *L.Ed.*2d 895 (1978).

In a subsequent case, *Scheuer v. Rhodes*, 416 *U.S.* 232, 94 *S.Ct.* 1683, 40 *L.Ed.*2d 90 (1974), the Court decided that state officials had a qualified immunity for acts conducted within the scope of their discretionary duties. It then became the task of the Supreme Court to set guidelines for defining the scope of qualified immunity. The guidelines for the scope of qualified immunity were established in the case of *Wood v. Strickland*, 420 *U.S.* 308, 95 *S.Ct.* 992, 43 *L.Ed.*2d 214 (1975).

The Court held that the appropriate standards for qualified immunity must take into context the "objective" and "subjective" tests of good-faith. Specifically, the Court stated:

> We hold that a school board member is not immune for liability for damages under § 1983 if he knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional right of the student affected, or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury to the student. [420 *U.S.* at 322, 95 *S.Ct.* at 1001]

Although the decision in *Wood* dealt with the individual responsibility of school board members for disciplinary proceedings against students, the immunity standards established in *Wood* are applicable, and analogous to the present situation. This court is asked to review the conduct of the planning board and the town planner of West Orange as they affected the plaintiffs' rights of individual applicants for development of township land. The Appellate Division in *Endress v. Brookdale Community College, supra*, stated the rule as follows:

> There should be a consideration of the objective and subjective criteria of good faith mandated by *Wood v. Strickland;* that is, the subjective aspect of whether the official acted sincerely and with a belief that he was doing right, and not with the malicious intention to cause a deprivation of constitutional rights; and, if that test was met, the objective standard of whether the official knew or *reasonably* should have known that his act would violate the clearly established constitutional rights of plaintiff. [144 *N.J. Super.* at 136–137]

It should be noted that defendants rely upon the cases of *T & M Homes, Inc. v. Township of Mansfield, supra* and *Centennial Land & Development Co. v. Township of Medford,* 165 *N.J. Super.* 220 (Law Div.1979) for the proposition that the individual members of the planning board are entitled to absolute immunity. Those cases are not binding upon this court for two reasons. First, both the *T & M Homes, Inc.* and *Centennial Land* holdings are Law Division cases. This court, although giving deference to the trial judges' legal analysis, is not bound to any precedential value. Secondly, both cases were decided before *Owens v. City of Independence,* 445 *U.S.* 621, 650–61, 100 *S.Ct.* 1398, 1415, 63 *L.Ed.*2d 673 (1980) in which the Supreme Court held that municipal entities did not possess immunity of any kind in civil rights actions under § 1983. It is best to remember that the "central aim of the Civil Rights Act was to provide protection to those persons wronged by the (m)isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." By creating an express federal remedy, Congress sought to enforce the provisions of the Fourteenth Amendment against those who carry a badge of authority of a state and represent it in some capacity, whether they act in accordance with their authority or misuse it. *Owen v. City of Independence, supra,* (quoting *Monroe v. Pape,* 365 *U.S.* 167, 184, 81 *S.Ct.* 473, 482, 5 *L.Ed.*2d 492 (1961)).

With the foregoing principles and standards in mind, it becomes the onerous task to scrutinize the actions or inactions of the Planning Board of West Orange, its members, and the town planner, as they affect plaintiffs.

As was noted previously, this action stems from an application for site approval for the development of townhouses. The initial application was submitted to the Planning Board of West Orange in May 1979. Plaintiffs encountered many delays. These delays encompassed a prolonged period of time during which defendants did not permit plaintiffs to develop their land for townhouses although the property had been zoned for

cluster development. Certain of the postponements were valid, *i.e.*, objectors from Livingston and the ensuing injunction. However, a vast majority of the delays were mere delaying tactics.

The matter eventually proceeded to the Superior Court. Judge Marzulli held that defendants' actions were arbitrary and capricious and ordered the planning board to approve the site plan application. Plaintiff's application was unanimously approved by the planning board on November 3, 1982, pursuant to the order. It is from that point that there occurred more delaying tactics. Although the board had approved the site plan, plaintiffs were still unable to proceed with their plans. The board either directly or indirectly delayed the final signing of the site for 13 months, until December 3, 1983, when plaintiffs sold the land.

It is apparent from the factual record that defendants were not acting with sincerity and with a belief that they were doing right. Plaintiffs encountered too many "coincidental" obstacles in their quest for site plan approval. This court has no difficulties in concluding that defendants were acting with malicious intent which resulted in depriving plaintiffs of their rights.

The next task is to decide whether defendants knew or reasonably should have known that their acts would violate the constitutional rights of plaintiffs. New Jersey's M.L.U.L. represents the public policy of this State in the development and use of land. In order to insure prompt municipal review of applications, the M.L.U.L. requires a planning board to grant or deny preliminary approval within 45 days of the submission of a completed application. *N.J.S.A.* 40:55D–48c. In *Manalapan Holding Co. v. Hamilton Township Planning Board*, 184 *N.J. Super.* 99 (App.Div.1982), rev'd on other grounds 92 *N.J.* 466 (1983), the Appellate Division held:

> It is evident that the statutory approval mechanisms of the Municipal Land Use Act were intended to preclude the practices to which municipalities theretofore resorted to endlessly protract final determinations of land development applications .... [184 *N.J. Super.* at 108]

It is plaintiffs' contention that the flagrant violations of the M.L.U.L. were what constituted the § 1983 violations. I agree. Therefore, I find that the action of defendants with respect to the M.L.U.L. violations instilled a knowledge on the part of the defendants that they were in violation of plaintiffs' constitutional rights.

It is without hesitancy and with the following quote in mind:

No man in the country is so high that he is above the law. No officer of the law may set that law at defiance with impunity. All officers of the government from the highest to the least, are creatures of the law, and are bound to obey it. [*U.S. v. Lee*, 106 *U.S.* 196, 220, 1 *S.Ct.* 240, 260, 27 *L.Ed.* 171 (1882)]

that I find the defendants are not entitled to hide behind the veil of good-faith qualified immunity.

The testimony of defendants Samuel Spina, Joseph Brennan, Jr. and Alton Williamson clearly indicate the reservations of the planning board which led to the delays and subsequent detriments to plaintiffs.

It, therefore, becomes the court's task to decide the damages issue. The Supreme Court in *Wood v. Strickland, supra,* held that a compensatory award will be an appropriate remedy "only if the school official has acted with such an impermissible motivation or with such disregard of the plaintiff's clearly established constitutional rights that his action cannot reasonably be characterized as being in good-faith." 420 *U.S.* at 323, 95 *S.Ct.* at 1001. I find that plaintiffs are entitled to compensatory damages dating from November 1982 when the site plan approval was granted until December 1983 when the property was subsequently sold, plus interest dating from November 1982 together with attorney fees and punitive damages.

Accordingly, defendants Joseph Brennan, Sr. and Fred W. LaBastille are dismissed and are not parties to the damage issue.

In order to compute compensatory damages, the court finds the undisputed testimony of Joseph E. Baldoni to be highly

credible. He appraised the market value of the land in question as of May 1979 at $17,000 a unit for 36 units—or $612,000. The option value of the land was computed as 10% of the market value of $61,200 a year or $5,100 a month. Plaintiffs are entitled to compensatory damages for 13 months from November 1982 until December 1983 when plaintiffs sold the property which amounts to $66,300 and interest.

As to punitive damages, *Endress v. Brookdale Community, supra,* held that:

> An award of punitive damages, also termed exemplary damages, is discretionary and not a matter of right. Discretion here means "legal discretion in the exercise of which the trial judge must taken into account the applicable law and the particular circumstances of the case, to the end that a just result is reached." *Security Corp. v. Lehman Associates, Inc.,* 108 *N.J. Super.* 137, 145 (Appl Div.1970). Punitive damages are allowed "to punish the wrongdoer for a willful act and to vindicate the rights of a party in substitution for personal revenge, thus safeguarding the public peace." *Winkler v. Hartford Acc. and Indemn, Co.,* 66 *N.J. Super.* 22, 20 (App.Div.1961), certif den. 34 *N.J.* 581 (1961). While each case must be governed by its own facts, the generally recognized factors are "(1) actual malice, which is nothing more or less than intentional wrongdoing—an evil-minded act; or (2) an act accompanied by a wanton and willful disregard of the rights of another" *LaBruno v. Lawrence,* 64 *N.J. Super.* 570, 575, (App.Div.1960), certif. den. 34 *N.J.* 323 (1961).
>
> In the context of a § 1983 action, punitive damages are recoverable provided there is a finding that the conduct of the public official "manifests a reckless indifference to the property rights of others, illwill, a desire to injure or malice." *Silver v. Cormier,* 529 *F.*2d 161, 163 (10 Cir.1976). See also, *Seaton v. Sky Realty Co., Inc., supra,* 491 *F.*2d at 638; *Sexton v. Gibbs,* 327 *F.Supp.* 134 (N.D.Tex.1970), aff'd 446 *F.*2d 904 (5 Cir.1971), cert. den. 404 *U.S.* 1062, 92 *S.Ct.* 733, 30 *L.Ed.*2d 751 (1972). There seems to be no substantial difference between the federal standard and that of this jurisdiction. It is to be noted, additionally, that "punitive damages are not a favorite in the law and are to be allowed only within narrow limits." *Fisher v. Volz,* 496 *F.*2d 333, 347 (3 Cir.1974). [144 *N.J. Super.* at 144–145]

This court finds that punitive damages should be assessed against the individual defendants Samuel Spina, Joseph Brennan, Jr. and Alton Williamson in the amount of $5,000 each.

The next issue is the question of attorney fees. The Civil Rights Attorney Fees Award Act of 1976, 90 *Stat.* 2641; 42 *U.S.C.A.* § 1988 permits prevailing parties, in the discretion

of the court, in § 1983 suits to obtain attorneys' fees from losing parties.

Defendants in these cases are often State or local bodies or State or local *officials*. In such cases it is intended that the attorneys fees, like other items of costs, will be collected either directly from the official, *in his official capacity*, from funds of his agency or under his control, or from the State or local government (whether or not the agency or government is a named party.) [S. Rep. No. 94–1011 at 5 (1976); U.S. Code Cong.Admin. News 1976 at 5908, 5913; emphasis supplied]

Courts awarding counsel fees under the Fees Act should consider the 12 factors listed in *Johnson v. George Highway Express, Inc.*, 488 *F.*2d 714, 717–719 (5 Cir.1974):

(1) the time and labor required;

(2) the novelty and difficulty of the question presented;

(3) the skill required to perform the legal obligations;

(4) the preclusion of other employment by the attorney due to the acceptance of the case;

(5) the customary fee in the community;

(6) whether the fee is fixed or contingent;

(7) time limitations imposed by client or circumstances;

(8) amount involved and the results obtained;

(9) experience, reputation and ability of the attorney;

(10) undesirability of the case;

(11) the nature and length of the professional relationship with the client; and

(12) awards in similar cases.

This court will allow counsel fees to plaintiffs upon presentation of a certification within ten days and the opportunity to defendants to contest the same within ten days thereafter.