**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4545-17T1

MARIO ROSARIO,

    Plaintiff-Respondent,

v.

LEONARDO PALLAZHCO
and MARIA MONTANO,

    Defendants/Third-Party
    Plaintiffs-Appellants,

v.

GARY S. MOLDOVANY, PLS,
RICHARD J. HINGOS, JR., PLS,
and RICHARD J. HINGOS, INC.,

    Third-Party Defendants.

_____

        Argued November 7, 2019 – Decided December 9, 2019

        Before Judges Koblitz, Whipple and Gooden Brown.

        On appeal from the Superior Court of New Jersey,
        Law Division, Essex County, Docket No. L-3923-17.

Donald J. Rinaldi argued the cause for appellants (DiBiasi & Rinaldi, attorneys; William Enrique Agrait on the briefs).

Stephanie J. Blumstein argued the cause for respondents (Wade Clark Mulcahy, LLP, and Einbinder & Dunn, LLP, attorneys; Steve J. Kim, Stephanie J. Blumstein, and Michael Einbinder (Einbinder & Dunn, LLP) of the New York bar, admitted pro hac vice, on the brief).

PER CURIAM

Defendants Leonardo Pallazhco and Maria Montano[1] appeal from an April 30, 2018 judgment, corrected on June 8, 2018, in favor of plaintiff Mario Rosario for $91,069[2] in damages. After a four-day bench trial, the judge entered an order for damages based on defendants' refusal to remove, or allow plaintiff to remove, a fire escape which encroached on plaintiff's property. The fire escape prevented plaintiff from finishing construction on a new building. After a more than two-year delay, the fire escape was removed and construction was completed. In the interim, the property sustained significant weather damage requiring repairs. Plaintiff was awarded damages for the costs of the repairs, as well as for lost rents. Defendants appeal, arguing the trial judge applied an

---

[1] Defendants are married.

[2] We round off to the nearest dollar.

2

incorrect legal standard when determining liability and the amount of damages. We affirm.

Defendants do not challenge the trial judge's factual findings. In April 2013, plaintiff acquired his Newark property. Defendants purchased the property next-door to plaintiff's in December 2014.

Plaintiff had a survey of the property performed in connection with his purchase. It was prepared by surveying the boundary lines of plaintiff's property on the ground. The judge found that the title survey was proper for the intended purpose.

Defendants also had a title survey performed in connection with their purchase. This survey did not indicate any encroachment onto plaintiff's property, and showed the space between the buildings was around two feet.

Plaintiff purchased his property intending to construct a new two-family rental home. Plaintiff's architect drew up architectural plans using plaintiff's survey. The trial judge found that the architect prepared the architectural plans properly.

In April 2014, plaintiff applied to the Newark Board of Adjustment for zoning variances using the architectural plans. The variances plaintiff requested for his new building had been granted to the prior structure. One of the requested

variances was for an insufficient side yard. The architectural plans showed the new building several inches away from the property line, which required plaintiff to obtain a variance. The Board of Adjustment approved plaintiff's application.

In the summer of 2015, plaintiff began construction on the new building, still unaware of the fire escape encroachment from defendants' property. After construction began, defendants were under the impression that plaintiff was building on their property. Defendants requested that their surveyor return and stake the property line. He prepared a revised survey of defendants' property in August 2015.

Plaintiff's general contractor verified that the new home was being built in the correct spot and within the property boundary. He confirmed this by having another surveyor ensure the foundation was being built within the stake out. This survey was also on the ground, and did not reveal the fire escape encroachment. Construction resumed thereafter.

Late in the summer of 2015, as the framing for the building was going up, the general contractor realized a fire escape on the neighboring property went over the property line. The way the fire escape was positioned prevented completion of construction. Plaintiff, the general contractor, and the mason, all

of whom the trial judge found to be "very credible," asked defendant Pallazhco to repair or remove the fire escape.

In one of the letters sent by plaintiff's counsel to defendants' counsel, plaintiff requested defendants' permission to repair the fire escape so he could build the second floor of his property. Plaintiff offered to pay for the repairs himself to "avoid further delays and maintain a courteous relationship."

The trial judge found that plaintiff "made all efforts" to work with defendants to resolve the issue. He also found that Pallazhco rejected every request to repair or remove the fire escape encroachment. Instead, Pallazhco demanded that plaintiff pay him $100,000 to fix the encroachment, a demand plaintiff rejected. Pallazhco testified at trial that he refused to remove the fire escape because he felt threatened and did not like plaintiff's attitude. As a result of Pallazhco's refusal, plaintiff could not proceed with construction. In the spring of 2017, defendants finally authorized removal of the fire escape. When the fire escape was removed at the end of the summer of 2017, construction resumed on plaintiff's property.

Plaintiff's office manager testified about damages. She testified that plaintiff had to pay additional builder's risk insurance because of the delay in construction. Plaintiff also had to pay to cover the hole in the wall and to help

A-4545-17T1

protect the property from the weather because the encroachment prevented the wall from being closed up. The judge found that this cost plaintiff more than $2000 and that plaintiff and the contractor "made reasonable attempts to tarp and otherwise cover and protect" the side of the structure. The property also needed to be secured with fencing, which cost plaintiff slightly less than $2000.

During the more than two-year construction delay, the property suffered significant weather damage. Plaintiff performed the necessary repairs, including reinforcing walls, replacing air ducts, and repairing wiring and other electrical components. The trial judge found that all of the repairs were necessary and would not have been needed but for the more than two years the building was exposed to the elements.

Absent expert testimony, the trial judge did not accept defendant's argument that plaintiff did not adequately mitigate his damages.

The trial judge found that plaintiff proceeded to build a roof after learning of the fire escape encroachment. He found this was a "reasonable decision" because plaintiff was attempting to protect what had been built from the weather. If the building had been left, the structure would have been "rendered un-useable and irreparably weather damaged by the time plaintiff was ultimately able to resume construction." The judge also found that plaintiff and his contractor

6

made "reasonable efforts" to maintain the tarp over the hole in the wall despite the difficulty created by the wind tunnel between the buildings.

Plaintiff also sought lost rents from January 1, 2016 to March 31, 2018 for a total of $124,000, based on testimony by an expert in real estate appraisal. The trial judge found the estimate to be too high and instead found a $60,000 loss of rents. The judge awarded a total of $91,069 in damages plus interest, costs, and disbursements. The damages awarded included the lost rents, the cost of labor and repairs, and the cost of securing the property and weatherproofing the open wall. The trial court dismissed defendants' counterclaim.

Factual findings by the trial judge "are considered binding on appeal when supported by adequate, substantial and credible evidence." Rova Farms Resort, Inc. v. Inv'rs. Ins. Co. of Am., 65 N.J. 474, 484 (1974). We should not disturb the trial court's factual findings unless convinced "that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonable credible evidence as to offend the interests of justice." Ibid. "A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P. v. Manalapan Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

A-4545-17T1

Defendants argue that they should not be liable for the damages caused by the fire escape encroachment (trespass) because it was on the building when they purchased it and because neither party was aware of the encroachment until after construction began. Their argument essentially rests on a lack of intent.

In his decision, the trial judge relied on La Bruno v. Lawrence, 64 N.J. Super. 570 (App. Div. 1960). In La Bruno, the defendant aggravated the original mistaken trespass by refusing to address the fence built over the property line when both plaintiff and plaintiff's counsel brought it to his attention. 64 N.J. Super. at 577. The trial court awarded damages, including punitive damages, against the defendant, because his "stubborn" refusal to address the trespass constituted either actual malice or willful disregard of another's rights. Ibid. The situation here is analogous. Although defendants did not erect the fire escape in this case, once they were made aware of the encroachment, they refused to remedy the situation. Like the defendant in La Bruno, Pallazhco "stubborn[ly]" refused to fix the fire escape.

The Restatement (Second) of Torts § 161 (Am. Law. Inst. 1965) indicates that a trespass may be committed "by the continued presence on the land of a structure . . . which the actor's predecessor . . . tortiously placed there, if the actor, . . . having thereafter learned of it, fails to remove the thing."

Defendants also argue that the cause of plaintiff's damages was that the structure was "wrongfully place[d]." They rely on a Newark Zoning Ordinance providing that any new construction "could not encroach within [three feet] of another building's windows or other fenestrations nor block emergency access to those fenestrations." City of Newark, N.J., Zoning Ordinance § 40:3-9(b) (2008) (repealed 2015). Defendants go on to recite the definitions of "block" and "nor" and then point to the contractor's testimony regarding how close the fire escape was to the new building. They assert that this proves plaintiff's builder's negligence.

As was proven at trial, plaintiff received a variance to build the new structure several inches from the property line. The trial judge found that the contractor's testimony was credible and that he properly followed the architectural plans, abiding by all applicable rules and regulations. Defendants provided no expert testimony to indicate the contractor or architect were professionally negligent. We accept the fact-finding and credibility determinations of the trial judge and agree with his legal assessment.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4545-17T1