# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3836-18T1

Y.Z.,

    Plaintiff-Respondent,

v.

W.X.,

    Defendant-Appellant.

_____

Argued March 16, 2020 – Decided May 14, 2020

Before Judges Sumners and Natali.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FV-07-1806-19.

William J. Von Der Heide argued the cause for appellant (Law Office of Sara Sencer McArdle, LLC, attorneys; William J. Von Der Heide, of counsel and on the briefs).

Danielle E. Gonnella argued the cause for respondent (Greenberg Traurig LLP, attorneys; Aaron Van Nostrand, Jason Harris Kislin, Jaclyn M. DeMais, and Danielle E. Gonnella, on the brief).

PER CURIAM

Defendant appeals the Family Part's April 8, 2019 order awarding plaintiff, his estranged wife, punitive damages in the amount of $10,000 in accordance with the Prevention of Domestic Violence Act of 1991 (PDVA), N.J.S.A. 2C:25-17 to -35, following a hearing in which a final restraining order (FRO) was issued against him for assault. We affirm in part and reverse and remand in part.

I

Plaintiff filed a domestic violence complaint charging defendant with the predicate acts of assault, N.J.S.A. 2C:12-1, and terroristic threats, N.J.S.A. 2C:12-3, committed on December 4, 2018. After a temporary restraining order was issued that same day, plaintiff amended her complaint to include the charges of harassment, N.J.S.A. 2C:33-4, and criminal coercion, N.J.S.A. 2C:13-5, and prior acts of verbal and physical abuse. Plaintiff also sought compensatory and punitive damages. N.J.S.A. 2C:25-29(b)(4).

A one-day domestic violence hearing was held on February 21, 2019. Plaintiff and Livingston Police Department Officers Carl McNamara, David Cordero, and Raughn Sommerville testified.[1] Defendant did not testify.

Plaintiff testified that on December 3, 2018, she and defendant discussed getting a divorce, as they had previously done a few days earlier. Early the next morning, around 4:00 a.m., defendant came into the room where plaintiff was sleeping to further discuss a divorce. Plaintiff stated about two minutes into the conversation, defendant became angry, accused her of having many boyfriends, and kicked her "very hard" off the bed. Plaintiff testified she was "petrified" and tried to calm him down, but he continued to berate her, calling her a "bad woman" and accusing her of having affairs. Defendant grabbed and squeezed her face, and plaintiff recalled being in so much pain she was unable to speak. According to plaintiff, defendant then threatened to kill her.

Plaintiff testified she thought defendant's anger subsided after he released his grip on her face, but his scolding and accusations continued, and he then strangled her. After calling for help, her eldest daughter, thirteen years old at the time, came into the room and yelled at defendant "what are you doing[?]".

---

[1] We do not detail Cordero and Sommerville's testimony because it pertains to an October 2015 incident where defendant allegedly physically abused plaintiff, which is not relevant to the issues on appeal.

A-3836-18T1

Defendant thereafter placed a video phone call to plaintiff's father, telling him plaintiff was having extra-marital affairs. Plaintiff stated after she denied the accusations to her father, defendant tried to hit her again. Her father told her to call the police. She stated she told her father she could not call the police because defendant would go to jail and would not take care of their two children living with them.[2] Plaintiff stated defendant voiced his approval, claiming "if I go to jail, all of you will have nothing to eat."

Plaintiff testified while defendant was still on the phone she ran downstairs, grabbed her car keys, and drove to a friend's house out of fear defendant would kill her. Later at her friend's house, plaintiff called her divorce attorney because she knew from an earlier incident in October 2015, her attorney could advise her on applying for a restraining order. At around 11:00 a.m., plaintiff, still in her pajamas, went to the police station where she met with McNamara.

Plaintiff also testified regarding defendant's income to support her request for compensatory damages. She claimed between June 8, 2018 and January 9, 2019, he deposited $87,806 of rental income from a Florida rental property and tax refunds into their joint bank account.

---

[2] Their youngest daughter, six years old, lives in China with defendant's mother.

A-3836-18T1

McNamara testified that on December 4, 2018 at 11:00 a.m., he spoke to plaintiff at the Livingston police station regarding her report she had been assaulted by defendant at their home earlier that morning. He stated plaintiff had a reddened right cheek, broken capillaries, marks on her neck evidencing strangulation, and a defensive wound on her right hand. Pictures of plaintiff's injuries taken at the police station that day, according to McNamara's cross-examination testimony, did not clearly depict the injuries he observed firsthand. Defendant was arrested on a later date by a different police officer.

At the conclusion of the parties' summations, the court rendered an oral decision. The court determined plaintiff proved by a preponderance of the evidence that defendant committed the predicate domestic violence act of assault on December 4 and issuance of an FRO was appropriate under Silver v. Silver, 387 N.J. Super 112 (App. Div. 2006). In reaching its decision, the court credited the testimony of plaintiff and the police officers, noting there was no testimony to contradict plaintiff's accusations against defendant. The court determined plaintiff did not prove defendant's conduct constituted terroristic threats.[3] Based

---

[3] As for the harassment and criminal coercion charges, our review of the record does not reveal how they were disposed of. Nevertheless, it is unimportant as there are no issues on appeal related to those charges.

on its finding of assault, the court found the need for an FRO was "self-evident."[4] In accordance with N.J.S.A. 2C:25-29(b)(4), the court ordered defendant to pay plaintiff $3000 a month for interim support and plaintiff receive monthly income of $3800 from the parties' Florida rental property.  To address plaintiff's claim for additional damages, including punitive damages, the parties were directed to submit certifications to the court.

Plaintiff subsequently submitted uncertified, handwritten exhibits, including a case information statement pertaining to their pending divorce, claiming defendant earns over $200,000 annually.  Plaintiff requested upwards of $20,000 in monthly support and punitive damages of $100,000.  In response, defendant submitted a 2018 W-2 form showing his wage earnings of $74,706 from a business he owned.

On April 8, 2019, without an additional hearing or argument, the court issued an order directing defendant to pay plaintiff $10,000 in punitive damages.

In a May 9 statement of facts and conclusions of law, the court explained its reasoning for the order.   The court explained it did not award plaintiff any additional compensatory damages because the parties' "pending divorce matter

---

[4]  The Court also cited defendant's prior history of abuse as testified to by plaintiff, Cordero and Sommerville.

. . . is the more appropriate forum to address pendente lite support." However, the court reasoned punitive damages were appropriate because there was clear and convincing proof that defendant's conduct was wanton and reckless based upon its findings in granting plaintiff's request for an FRO. Nappe v. Anschelewitz, Barr, Ansell & Bonello, 97 N.J. 37, 49 (1984); N.J.S.A. 2A:15-5.10. In determining the amount of punitive damages, the court acknowledged the lack of "detailed financial information" in noting plaintiff's submission, "without certification or proof, that [d]efendant earns over $200,000 annually." The court further noted defendant's limited submission of 2018 W-2 statement showing wage earnings of $74,706, did not mean he had no other income that year. Yet, "[r]egardless of the certainty of the information presented, the court . . . weighed the factor of [d]efendant's financial condition" requiring him to pay $10,000 in punitive damages. This appeal followed.

II

Defendant does not challenge the trial court's order issuing an FRO due to the predicate act of assault but limits his appeal to the $10,000 punitive damages award. Specifically, he argues: (1) the court abused its discretion because there was no competent clear and convincing evidence that his conduct was willful, wanton, or malicious to warrant punitive damages; and (2) the court should have

conducted a plenary hearing to determine his financial condition and ability to pay punitive damages because there was conflicting evidence concerning his income.

At a hearing under the PDVA to determine whether an FRO should be issued, where appropriate, the court may award punitive damages in addition to compensatory damages when it finds it is "necessary to prevent further abuse." N.J.S.A. 2C:25-29(b)(4); see also D.N. v. K.M., 216 N.J. 587, 593 (2014); Lickfield v. Lickfield, 260 N.J. Super. 21, 23 (Ch. Div. 1992). Although the PDVA does not speak to the standard the court should apply in determining punitive damages other than to prevent further abuse, the court, as well as the parties, have looked to the Punitive Damages Act, N.J.S.A. 2A:15-5.9 to -5.17, for guidance.

N.J.S.A. 2A:15-5.12 provides:

> a. Punitive damages may be awarded to the plaintiff only if the plaintiff proves, by clear and convincing evidence, that the harm suffered was the result of the defendant's acts or omissions, and such acts or omissions were actuated by actual malice or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions.
>
> [(Emphasis added).]

A-3836-18T1

Actual malice is defined as "an intentional wrongdoing in the sense of an evil-minded act." N.J.S.A. 2A:15-5.10. "Wanton and willful disregard" is defined as "a deliberate act or omission with knowledge of a high degree of probability of harm to another and reckless indifference to the consequences of such act or omission." Ibid.

Considering these statutory guidelines, we discern no reason to upset the court's factual finding that defendant's actions in kicking plaintiff, forcefully grabbing and squeezing her face, and strangling her was a malicious, wanton, and willful disregard of the likelihood that he would inflict serious harm to her. The court's decision was based upon the credible testimony of plaintiff and McNamara detailing defendant's assault and plaintiff's injuries. Cesare v. Cesare, 154 N.J. 394, 411-12 (1998) (findings by the trial court "are binding on appeal when supported by adequate, substantial, credible evidence") (citing Rova Farms Resort, Inc. v. Investors Ins. Co., 65 N.J. 474, 484 (1974)); see also State v. Locurto, 157 N.J. 463, 474 (1999) ("Appellate courts should defer to trial courts' credibility findings that are often influenced by matters such as observations of the character and demeanor of witnesses and common human experience that are not transmitted by the record."). Plaintiff's testimony of the early morning assault she suffered from defendant was uncontroverted.

A-3836-18T1

McNamara's testimony concerning his observation of plaintiff's injuries from the assault some five hours after it occurred confirmed evidence of the assault. Defendant's acts were intentional and demonstrated an "evil-minded act" justifying an award of punitive damages. See Di Giovanni v. Pessel, 55 N.J. 188, 190 (1970) (quoting LaBruno v. Lawrence, 64 N.J. Super. 570, 575 (App. Div. 1960)).

Turning to the amount of the award, defendant contends a plenary hearing was required because the parties made conflicting claims regarding defendant's annual income and plaintiff's proofs were not established by "trustworthy evidence." While we agree with defendant the court seemingly dismissed plaintiff's proofs of defendant's income, it is not clear from our reading of the court's decision that the $10,000 punitive damages award was based solely on its decision to accept defendant's proof of his income. The court wrote, "[a]pplying all the relevant factors, the court determines that [d]efendant shall be ordered to pay $10,000 in punitive damages to [p]laintiff." Because we are unable to ascertain what "all the relevant factors" are, a remand is necessary for the court to clarify its factual findings as to defendant's annual income at the time of the hearing and how it determined the amount of its punitive damages award was warranted. We leave it to the court to determine if additional

10

financial information is needed, and whether oral argument or a plenary hearing is necessary.

To the extent we have not addressed any of defendant's arguments, it is because we conclude they are without sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed in part and reversed and remanded in part.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3836-18T1